IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

Donnie Cook, Petitioner

v.

Stan Payne, Respondent

RECEIVED DEC 19 2018 BY MAIL

Petition for Writ of Habeas Corpus pursuant to Supreme Court Rule 91

Comes now Petitioner Donnie Cook, Pro Se. Seek immediate relief Pursuant to Section 532.010 R.S.Mo. In support of his Petition, Petitioner states:

1. Donnie Cook, The Petitioner in this action is an Inmate held in custody at Eastern Reception Diagnostic Corr. Center in St. Francios County, MO.

2. Stan Payne, the Respondent in this action, is the superintendent of the Prison known as E.R.D.C.C.

3. Petitioner is in restraint of liberty, in that he has been placed in Administrative Segregation indefinitely for a home-made weapon in violation of Due Process, Equal Protection and under atypical and significant hardship.

4. Jurisdiction and venue of this Petition lies with this court Pursuant to Rule 91.02(a). Pursuant to Rule 91.04(a)(4), Petitioner also states that no Petition for relief raising the issues brought herein has been sought in any higher court.

1

## Procedural History

5. Petitioner was issued a conduct violation along with his cellmate after a homemade knife was found wrapped around the railing of his cellmates bunk.

6. The Disciplinary hearing officer assessed punishment of (30) days disciplinary segregation, one (1) yr. restricted non-contact visits, one (1) yr. Restricted premium pay, refered for prosecution, and indefinite assignment to administrative segregation.

7. Petitioner filed a rivjew for Habeas corpus and R.S mo. 536.014 in Aug. 2018 and his claims for relief was denied on Nov. 27 2018 See: Cook V. Payne no. 18SF-AC01389

## Factual history, Denial of Due Process, Equal Protection, and atypical and significant hardship

8. Petitioner along with his cellmate was both issued a major conduct violation for a homemade knife that was found wrapped around the railing of his cellmates bunk. Both he and his cellmate was placed in administrative segregation pending disposition of the conduct violation.

Petitioner was subsequently found guilty and punishment meted out as setforth in Para. 6. His cellmate was thereafter found not guilty and released back to General population, where all Privileges and Honor status was restored, even though the knife was found around the railing of his bed.

Petitioner requested during his disciplinary hearing that the

"camera" be reviewed as evidence substantiating that, while petitioner and his cellmate was at work, his cell door was accessed, allowing another inmate to enter his cell and plant the knife. This requested evidence was denied.

Courts after Sandin v. Conner, 515 U.S. 472, 475-476 (1995) has been constant in holding that, due process is denied, disciplinary bodies fail to review relevant videotapes See: Howard v. US. Bureau of Prisons, 487 F.3d 808, 813-15 (7th cir. 2007); Piggie v. Cotton, 344 F.3d 674, 678-79 (7th cir. 2003); Phelps v. Tucker, 370 F. Supp. 2d 792, 797 (N.D. Ind. 2005); Mayers v. Anderson, 93 F. Supp 2d 962 965-68 (N.D. Ind. 2000); Burns v. Pa. Dept. of Corr, 642 F.3d 163, 171 (3rd cir. 2011) (Refusal of hearing examiner to review Prison Video tape - Due Process violation).

### Denial of Equal protection

Petitioner was denied Equal protection when his cellmates conduct violation, which arised out of the same occurance of the cell search, was dismissed and expunged from his record, even though the knife was found wrapped around the railing of his bunk.

Respondent or the lower court gave no rational basis for the difference in treatment, nor put forth any evidence showing how petitioner was not similarly situated to his cellmate. The Equal protection clause of the Fourteenth Amendment mandates that no state "shall deny to any person within its jurisdiction the Equal protection of the laws." To prevail on Equal protection claim, a plaintiff must prove, (1) that the State treated him

3

differently from others who were similarly situated; and (2) that the difference in treatment was not rationally related to any legitimate governmental intrest. **see:** Willowbrook v. olech, 528 U.S. 562, 564 (2000) (Equal protection requires Plaintiff to allege that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.")

### Atypical and Significant hardship

This circuit has held that, "in order for a prisoner to assert a liberty intrest, he must show some difference between his new conditions in segregation and the conditions in the General population which amounts to an atypical and significant hardship." **See:** Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003); Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2000); Wycoff v. Nichols, 94 F.3d 1187, 1190 (8th Cir. 1996)

Thus, it appears that this circuit now thinks the proper standard of comparison (the ordinary incidents of prison life) is conditions in the general population - atleast for prisoners who are sent to segregation from general population.

The Supreme court in Wilkinson v. Austin 545 U.S. 209, 223 (2005) (Stating that state-created liberty intrests are no longer based upon the language of regulations but rather upon the nature of prison conditions).

Petitioner asserts conditions imposed in segregation in relation to the ordinary incidents of prison life of what he can expect in the general population imposes an atypical

4

and significant hardship in that, unlike in Wilkinson, where recreation is one (1) hour per day. Petitioner is only allowed three (3) hours per week within a small outdoor cage approximately 8ft by 4ft shared with another prisoner in which he can do little more then stand still. He is unable to attend recreation periods during inclement weather due to winter coats not being consistently available, not being provided access to adequate winter clothing e.g. skullcaps, gloves or shoes and only allowed open toe flip-flops in rain, sleet or snow, no thermal underwear.

Being unable to attend recreation periods on a regular basis has caused petitioners muscles to atrophy and worsened his chronic knee problem.

Due to the near total sensory deprivation in Segregation, petitioner is experencing worsening psychological problems of halluclnating, sleep deprivation, anxiety attacks, extremely irritable, emotionally flat and loss of appetite which has reduced his weight to 115 lbs.

Respondent is aware that administrative segregation after 30 days for which petitioner is subjected to causes severe mental illness due to the fact that Missouri dept. of corr. Policy 21-1.2 Stipulates recommending psychological assessments of prisoners assigned to long-term segregation P.g. 4, and have now, through policy, custom, and usage extended these psychological assessment to being "weekly."

Petitioner is disqualified from participating in rehabilitation programs. Respondent refuses to ensure that the showers are adequately and consistently sanitized, which are often flooded, moldy, reeking with urine, semen, spit, insects and dead insects on the walls and floor. Theres no toilet brushes or sanitizing

5

solution issued to petitioner with which to prevent rodent and insect infestation, the spread of disease and foul oders, and he's expected to use his bare hands, coming into contact with feces and urine to try to clean the toilet.

Petitioner is provided one(1) set of underwear every three (3) days, which is often stained, dirty, or with feces stains. Further, adequate clothing is not provided at all for petitioner in which he must remain clad in only his underwear, and transported throughout the unit in this fashion eg. to sick call, mental health appointments, AD-seg hearings etc. to the spector of homosexual voyerism, crass sexual comments, thus, placing petitioner under a substantial risk of sexual assault.

Petitioner is subjected to four-point restraints of being handcuffed and shackled to a steel bench in a sitting hog-tie stress-position which causes severe strain and damages to joints and nerves for, including but not limited to, requesting protective custody from specific cellmates, sick-call, AD-seg review hearings or being moved between cells. which one can remain chained in this fashion for several hours without restroom breaks or food.

Taken together these conditions impose an atypical and significant hardship in relation to the ordinary incidents of prison life one can expect in the general population.

State Habeas Corpus can be used to challenge conditions of confinement.

Courts have consistently held that, "Habeas corpus is a proper remedy to seek relief from cruel and unusual

punishment or conditions even though detention itself was legal. See: <u>McIntosh v. Haynes</u>, (MO) 545 S.W. 2d 647 (1977); <u>State ex rel. Nixon v. Pennoyer</u>, 36 S.W. 3d 767, mo. App. Lexis 1797 (Mo. App. 2000); <u>In re: Harrell</u> 2 cal. 3d 675, 87 cal. Rptr. 504, 470 P.2d 640 (1970); <u>Wycoff v. Iowa dist. court for Lee county</u>, 580 N.W. 2d 786, 787 (Iowa 1998); <u>Wickham v. Fisher</u>, 629 P.2d. 896, 900 (Utah 1981) The denial of Due process and Equal protection resulting in unconstitutional classification issues of confinement which is atypical and significant hardship.

Wherefore, Petitioner prays this court enter a writ of Habeas corpus and injunctive relief ording Respondent to immediately release him back to General Population, dismiss and expunge the conduct violation due to the Due process and Equal protection violation which has caused him to be segregated under conditions that atypical and significant hardship. Petitioner asserts their is no adequate remedy to seek release from segregation due to violation of rights at a disciplinary proceeding.

<u>Certificate of Service</u>

I hereby certify that a true and correct copy was mailed prepaid postage to: Andrew J. Crane Attorney for Respondent at: P.O. Box 899 Jefferson City, MO 65102 this 10th day of Dec. 2018

*Donnie Cook*
Donnie Cook
Reg # 1171192
ERDCC Hwy K
Bonne Terre, MO 63628

7